# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | | |
|---|---|---|
| 21st MORTGAGE CORPORATION, | § § § § | |
| Plaintiff, | § | |
| vs. | § § | Case No. CV _____ |
| MINTON INDUSTRIES, INC. d/b/a MINTON'S HOME CENTER; RODNEY MINTON; TERRI HARMON; and SILVER RUN ENTERPRISES, LLC; Fictitious Defendants A through Z, inclusive, are those individuals, partnerships, corporations, limited liability companies, or other legal entities that were involved in any way in any of the transactions, participated in the fraudulent practices, provided fraudulent information, or otherwise co-conspired with the above-named Defendants in any manner to the detriment of 21st Mortgage, whose identities are currently unknown, but will be named when ascertained, | § § § § § § § § § § § § § § § § § § § § § | |
| Defendants. | § § | |

## COMPLAINT

1.  Plaintiff 21st Mortgage Corporation (hereinafter "21st Mortgage") is a Delaware corporation with its principal place of business in Knoxville, Tennessee.

1

1. 21st Mortgage is in the business of providing financing for real estate and mobile home purchases by way of both dealer floor plan financing and direct loans to individual consumers.

2. Phillip C. Ledbetter is an adult resident of Anniston, Alabama and is in the business of providing residential and commercial property appraisals in the Anniston/Talladega area.

3. G. B. Daniell Realty Company is an Alabama corporation, with its principal place of business in Anniston, Alabama. G. B. Daniell Realty Company is owned by Phillip C. Ledbetter, and is in the business of real estate sales, rentals, appraisals, acquisitions, and management.

4. Defendant Minton Industries, Inc. d/b/a Minton's Home Center is an Alabama corporation with its principal place of business in Oxford, Alabama.

5. Defendant Rodney Minton is an adult resident of Anniston, Alabama, and to the best of our knowledge, information, and belief is an owner, officer, and/or shareholder of Minton Industries, Inc.

6. Defendant Terri Harmon is an adult resident of Anniston, Alabama, and to the best of our knowledge, information, and belief is an owner, officer, and/or shareholder of Minton Industries, Inc.

7. Defendant Silver Run Enterprises, LLC is an Alabama limited liability company with its principal place of business in Anniston, Alabama.

Case 7:08-cv-00534-LSC   Document 1   Filed 03/27/08   Page 3 of 14

8. Fictitious Defendants A through Z, inclusive, are those individuals, partnerships, corporations, limited liability companies, or other legal entities that were involved in any way in any of the transactions, participated in the fraudulent practices, provided fraudulent information, or otherwise co-conspired with the above-named Defendants in any manner. The names, capacities, and relationships of Defendants A through Z will be alleged by amendment to this Complaint when they are known.

9. Named and Fictitious Defendants are hereafter known collectively as "Defendants."

10. Jurisdiction is proper in this Court pursuant to *28 U.S.C. § 1331*. The Plaintiff's claims arise under the Credit Repair Organizations Act, *15 U.S.C. § 1679, et seq.*, and the Racketeer Influenced and Corrupt Organizations Act, *18 U.S.C. § 1962, et seq.*

11. Jurisdiction is proper in this Court pursuant to *28 U.S.C. § 1332*, as there is complete diversity of citizenship between the Plaintiff and all Defendants and the damages alleged exceed the jurisdictional minimum of $75,000.00.

## THE SCHEME

12. Beginning in February, 2004, the following individuals sought to purchase a mobile home from Minton Industries, Inc.:

    (a) Reba K. Bishop
    (b) Max Brown, Jr.

(c) Daphne M. Bullard
(d) Valerie Hoopingarner
(e) Michael E. Jackson
(f) Douglas R. Lance
(g) Derrick L. McElderry
(h) Frankie D. Mealer
(i) Patrick Rogers
(j) Danika Storey
(k) Justin Turner
(l) Violet Wright

(hereinafter referred to collectively as "Mortgagors").

13. Minton Industries, Inc., by and through its agents, discussed the matter with each Mortgagor, and became aware that as a result of the Mortgagor's poor credit history, lack of assets, and low income, Mortgagor would not qualify for a conventional real estate and/or manufactured housing loan.

14. At that point, Minton Industries, Inc., by and through its agents, Rodney Minton and Terri Harmon, as well as other unknown employees of Minton Industries, Inc., began a scheme to induce 21st Mortgage to loan funds to Mortgagors for the purchase of a mobile home so that they might profit from the transaction at 21st Mortgage's detriment.

15. In order to demonstrate to 21st Mortgage that Mortgagors actually held some assets at the time of Mortgagor's loan application, Minton Industries, Inc., by and through its agents, Rodney Minton and Terri Harmon, produced false and misleading records, including records regarding improvements that had purportedly been made on the subject properties. They also provided false

4

appraisals and false statements regarding land ownership, which were mailed via U.S. Mail, or faxed via electronic transmission from Anniston, Alabama to Knoxville, Tennessee.

16. Subsequent deeds for some of the lots were prepared by Silver Run Enterprises indicating the transfer of property was from Silver Run Enterprises, LLC directly to Mortgagors, and not from Minton Industries to Mortgagors.

17. Minton Industries, Inc., by and through its agents, Rodney Minton and Terri Harmon, contacted Phillip Ledbetter, and G. B. Daniell Realty Company for the purpose of providing false and misleading appraisals on the lots conveyed to Mortgagors in order to induce 21st Mortgage to extend credit to the Mortgagors for which they otherwise would not have been approved.

18. Phillip C. Ledbetter and G. B. Daniell Realty Company then provided appraisals involving the subject properties which knowingly and willingly grossly overstated the value of said properties, and which were mailed via U.S. Mail, or faxed via electronic transmission from Anniston, Alabama to Knoxville, Tennessee.

19. Contained within the appraisals are numerous intentional false, misleading, and completely fabricated and otherwise untrue statements made knowingly by Phillip C. Ledbetter and G. B. Daniell Realty Company.

20. The sole purpose of the false and misleading appraisals was to grossly exaggerate the value of the lots conveyed to Mortgagors in order to induce 21st Mortgage to extend loans to Mortgagors for the purchase of a mobile home.

21. For their efforts in this "scheme", G. B. Daniell Realty Company and Phillip C. Ledbetter were paid the sum of $500 per appraisal directly from Minton Industries, Inc., by and through its agents, Rodney Minton and Terri Harmon, and were promised future similar transactions.

22. The fabricated appraisals and other documents were then delivered to 21st Mortgage, along with the credit applications of the Mortgagors completed by employees and agents of Minton Industries, Inc. and allegedly executed by Mortgagors.

23. Based upon this grossly inflated value of the properties in question, 21st Mortgage was induced to enter into what is commonly referred to as "land in lieu" transactions with Mortgagors, without knowledge of the true facts of the transactions. In these transactions, Mortgagor would pledge the lots conveyed to Mortgagor as described above as collateral for any loans provided to Mortgagor for the purchase of the mobile home. Mortgagor would also execute a mortgage and security agreement pledging the mobile home itself as additional collateral for the loan in question. With these conditions and upon reliance of the statements and

documents provided by the Defendants, 21st Mortgage agreed to make loan to Mortgagors.

24. Had 21st Mortgage been made aware of any of the facts stated above, particularly that the appraisals were intentionally fabricated, false and misleading, that Minton Industries, Inc., by and through its agents Rodney Minton and Terri Harmon, had provided the down payments for the loans to Mortgagors, and that Mortgagors contributed no funds for the down payment, 21st Mortgage would never have made the loans to Mortgagors.

25. 21st Mortgage also relied on false and misleading documents indicating that certain improvements were made by Minton Industries, Inc. and allegedly approved by the Mortgagors. These documents were relied upon by 21st Mortgage in authorizing the increase of the purchase price of the homes for certain improvements. Had 21st Mortgage been aware that no improvements had been made as indicated, the additional sums allocated for the false improvements would never have been authorized or paid by 21st Mortgage to Minton Industries, Inc.

26. The Defendants also submitted false Land Home Calculations, Closing Certifications for the transactions, and other false and misleading Documents with the intent for 21st Mortgage to rely upon said Documents.

27. As a result of the above described "scheme", 21st Mortgage was induced to extend credit by way of loans to Mortgagors. Mortgagors then failed to

meet their obligations under the Note and Security Agreement between themselves and 21st Mortgage, and were subsequently declared in default under their obligations.

28. As a result of this "scheme" to defraud 21st Mortgage, Minton Industries, Inc., Rodney Minton and Terri Harmon profited from these transactions from 21st Mortgage Corporation.

29. Silver Run Enterprises, LLC profited from lot sales.

30. As a result of the "scheme," the Defendants induced 21st Mortgage to extend credit in excess of $1,000,000.00 in these transactions, and suffer losses in excess of $175,000.00.

31. This same "scheme" was repeated numerous times by these Crossclaim Defendants, which constitutes a pattern and practice of the same activity against 21st Mortgage.

32. 21st Mortgage only discovered the "scheme" during the discovery process of <u>Wright v. 21st Mortgage Corp.</u>, AP No. 05-40186, when one of the Defendants admitted to the true nature of the transactions during discovery.

## **COUNT ONE - FRAUD**

33. 21st Mortgage hereby asserts and alleges paragraphs 1 through 32 as if fully set forth herein.

34. As a direct result of the numerous false and misleading statements of the Defendants upon which 21st Mortgage has relied to its detriment, 21st Mortgage has suffered financial losses and damages, including attorney's fees, as a direct result of this litigation and the transactions between 21st Mortgage and the Mortgagors listed above.

WHEREFORE, THE PREMISES CONSIDERED, Plaintiff 21st Mortgage hereby demands compensatory and punitive damages in excess of the jurisdictional limits of this Court, as may be determined by this Court, and such other, further and different relief as it may be entitled.

## COUNT TWO – SUPPRESSION OF MATERIAL FACTS

35. 21st Mortgage hereby asserts and alleges paragraphs 1 through 34 as if fully set forth herein.

36. The Defendants have suppressed material facts which they had a duty to disclose. As a result of the suppression of these material facts and as a direct result of the Defendants' "scheme", 21st Mortgage has suffered severe economic harm.

WHEREFORE, THE PREMISES CONSIDERED, Plaintiff 21st Mortgage hereby demands an award of compensatory and punitive damages in excess of the jurisdictional limits of this Court, and such other, further and different relief as it may be entitled.

## COUNT THREE – BREACH OF CONTRACT

37. 21st Mortgage hereby asserts and alleges paragraphs 1 through 36 as if fully set forth herein.

38. Defendants Minton Industries, Inc., Rodney Minton, Terri Harmon, and fictitious parties A thru Z each have contractual obligations to 21st Mortgage. The "scheme", including the numerous false, misleading, fabricated, and otherwise fraudulent statements and documents and other information provided to 21st Mortgage in the transactions set out above, are a clear breach of the contractual obligations of these Defendants.

39. As a direct result of the Defendants' breach of contract, 21st Mortgage has been caused to suffer severe economic damages, including attorney's fees, associated with the above referenced transactions.

WHEREFORE, THE PREMISES CONSIDERED, Plaintiff, 21st Mortgage, hereby prays that this Honorable Court will enter an award of compensatory damages against these Defendants, together with attorney's fees, in excess of the jurisdictional limits of this Court, and such other, further and different relief as 21st Mortgage may be entitled.

## COUNT FOUR – NEGLIGENCE

40. 21st Mortgage hereby asserts and alleges paragraphs 1 through 40 as if fully set forth herein.

41. If for some reason the "scheme" perpetrated as described above is not determined to be intentional or deliberate on the part of the Defendants, the actions and conduct of the Defendants clearly amounts to gross negligence.

42. As a direct result of the negligent actions of the Defendants, 21st Mortgage has been caused to suffer severe economic damages, including attorney's fees, arising from the above referenced transactions.

WHEREFORE, THE PREMISES CONSIDERED, Plaintiff 21st Mortgage hereby prays that this Honorable Court will enter an award of compensatory damages against the Defendants in excess of the jurisdictional limits of this Court, and such other, further and different relief as it may be entitled.

## COUNT FIVE – CIVIL RICO

43. 21st Mortgage hereby asserts and alleges paragraphs 1 through 42 as if fully set forth herein.

44. The "scheme" to defraud 21st Mortgage, as set forth above, involved the use of electronic transmission of information to 21st Mortgage across state lines through telephones, fax machines, and emails. Further, the "scheme" involved the use of the United States Postal Service. As such, the activities of the Defendants in the above referenced transactions, clearly constitutes a pattern of activity in excess of two acts of racketeering activity as defined by 18 U.S.C. § 1962, 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1344 (financial

institution fraud) each of which were committed for the direct financial gain of the Defendants at the expense of 21st Mortgage.

45.  As such, the ongoing pattern of prohibited racketeering activity should entitle 21st Mortgage to treble damages, compensatory damages, punitive damages, attorney's fees, and such other, further and different relief, in excess of the jurisdictional limits of this Court, as 21st Mortgage is entitled under the statute.

## COUNT SIX – CONVERSION

46.  21st Mortgage hereby asserts and alleges paragraphs 1 through 45 as if fully set forth herein.

47.  As a direct result of the actions and conduct of the Defendants as set forth above, the Defendants have converted for their own personal use the funds of 21st Mortgage.

WHEREFORE, THE PREMISES CONSIDERED, as a direct result of the conversion by the Defendants, 21st Mortgage prays that this Honorable Court will enter an award for compensatory and punitive damages in excess of the jurisdictional limits of this Court against the Defendants and such other, further and different relief as it may be entitled.

## COUNT SEVEN – CONSPIRACY

48.  21st Mortgage hereby asserts and alleges paragraphs 1 through 47 as if fully set forth herein.

12

49. The actions and conduct of the Defendants in this matter clearly amount to a conspiracy among them and against 21st Mortgage.

WHEREFORE, THE PREMISES CONSIDERED, Plaintiff 21st Mortgage hereby prays that this Honorable Court will award compensatory damages in excess of the jurisdictional limits of this Court against the Defendants and such other, further and different relief as it may be entitled.

## COUNT EIGHT – CREDIT REPAIR ORGANIZATIONS ACT

50. 21st Mortgage hereby asserts and alleges paragraphs 1 through 49 as if fully set forth herein.

51. The "scheme", as described above, as well as the false and misleading statements, documents and information provided to 21st Mortgage, were provided by the Defendants with the use of electronic transmissions and United States Mail for the sole purpose of inflating and/or misstating the credit worthiness, credit standing, or credit capacity of Mortgagors to induce 21st Mortgage to extend credit to Mortgagors, and to induce 21st Mortgage to make the loans to Mortgagors for which 21st Mortgage has suffered severe economic losses.

52. The actions of the Defendants constituted a violation of *15 U.S.C. § 1640* and *15 U.S.C. §1679, et seq.*

WHEREFORE, THE PREMISES CONSIDERED, Plaintiff 21st Mortgage prays that this Honorable Court would enter an award of compensatory and

punitive damages in excess of the jurisdictional limits of this Court, together with attorney's fees and the costs of this litigation, and such other, further and different relief as it may be entitled.

                                    /s/ Jeffrey C. Smith
                                    Jeffrey C. Smith (ASB-0231-H69J)

OF COUNSEL:
Rosen Harwood, PA
2117 Jack Warner Parkway
P. O. Box 2727
Tuscaloosa, AL  35403-2727
(205) 344-5000
jsmith@rosenharwood.com

Defendants' Addresses

Minton Industries, Inc. d/b/a
Minton Home Center
c/o Hugh L. Minton, Registered Agent
Route 7, Box 311
Oxford, AL  36203

Rodney Minton
5221 US Hwy 78 West
Oxford, AL  36203

Terri Harmon
5221 US Hwy 78 West
Oxford, AL  36203

Silver Run Enterprises, LLC
c/o Dwight Rice, Registered Agent
311 McIntosh Road
Oxford, AL  36203

i:\jeff\21st mortgage\g b daniell\pleadings\complaint docx